**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**HANCOCK BANK,**

    **Plaintiff/Counter Defendant,**

-vs-                                                Case No. 6:11-cv-1381-Orl-31GJK

**ORL, LLC; FRED W. SCHINZ; JOHN T. CHAIN, JR.; JOSEPH R. ROGERS; and LES W. BURKE,**

    **Defendants/Counter Claimants,**
**and**

**BLUE HERON BEACH RESORT DEVELOPER, LLC,**

    **Counter Claimant.**

## ORDER

This cause comes before the Court on a Motion to Dismiss the Counterclaim (Doc. 40), and a Motion to Strike (Doc. 39) filed by Plaintiff/Counter Defendant, Hancock Bank. Defendants/Counter Claimants[1] have filed two Responses (Docs. 44 & 45).

**I. Background**

On January 31, 2001, ORL entered into a $3,322,000.00 real estate promissory note and associated mortgage and loan documents (the "ORL Loan") with Peoples First Bank ("Peoples First")

---

[1] ORL, LLC ("ORL"), Fred W. Schinz ("Schinz"), John T. Chain, Jr. ("Chain"), J Ron Rogers ("Rogers"), and Les W. Burke ("Burke"); and Counter Claimant Blue Heron Beach Resort Developer, LLC ("Blue Heron").

guaranteed by Schinz, Chain, Rogers, and Burke (collectively, the "Guarantors"). (Doc. 31, ¶¶ 1-4). ORL used the loan proceeds to purchase a five-acre parcel of land upon which it constructed, in conjunction with Blue Heron (a "developer")[2], a new multi-tower condominium resort. Peoples First and ORL agreed to modify the loan several times during the next few years, eventually increasing it to $6 million. On August 28, 2003, Peoples First assigned the ORL Loan to Colonial Bank ("Colonial").

On September 26, 2005, Colonial extended a $20 million loan to Blue Heron (the "Blue Heron Loan") to build a condominium tower on the land purchased by ORL. From that point on, Counter Claimants allege that Colonial treated the ORL and Blue Heron Loans as a single loan. For example, beginning in late 2006 "Colonial continuously and regularly represented and promised to ORL that it would convert both to long term loans, such that each loan would be interest only, amortized over twenty-five (25) years, with a balloon payment due in five (5) years." (Doc. 31, ¶25). These representations were made by Colonial's "Area President," its "President for Lending in the Florida Panhandle," and its "Commercial Lending Officer" at various meetings and through email correspondence. (Doc. 31, ¶¶ 26-29). In late 2007, "despite all of its promises to convert the ORL and Blue Heron Loans, Colonial informed ORL that it would not extend either loan as promised." (Doc. 31, ¶ 33).

On April 16, 2008, Colonial re-assigned the ORL Loan to Peoples First. Colonial retained the Blue Heron Loan however, and entered into two agreements which are the subject of the instant suit; it added a "Good Faith Negotiations" clause to the Blue Heron Loan, and agreed to provide end-user

---

[2] ORL contends that the project was a joint venture between it and Blue Heron.

financing in connection with the condominium development. The "Good Faith Negotiations" clause states, "[t]he Borrower and the Lender will negotiate in good faith for an extension of the Loan after April 30, 2010 with negotiations to commence by January of 2010." (Doc. 31, ¶ 46). This provision apparently "led Blue Heron to believe that Colonial would live up to the promises that it had made to further extend the Blue Heron Loan." (Doc. 31, ¶ 46). On July 16, 2009, Colonial agreed with Blue Heron to provide end-user financing for the Blue Heron Condominium units–an agreement that was allegedly breached just before Colonial bank failed. (Doc. 31, ¶ 52).

In late 2009, both Colonial and Peoples First failed and were taken over by the FDIC; which in turn assigned the rights and obligations of Colonial and Peoples First to new banks. Branch Banking and Trust Company ("BB&T") assumed the rights and obligations of Colonial (including the Blue Heron Loan); and Hancock Bank assumed the rights and obligations of Peoples First (including the ORL Loan). (Doc. 31, ¶¶ 57-58).

Hancock Bank filed the instant suit on August 17, 2011 seeking to foreclose on the ORL Loan and to enforce the related guarantees. (Doc. 1). ORL, the Guarantors, and Blue Heron[3] filed a Counterclaim on December 29, 2011 asserting claims for breach of contract (for failure to provide the end-user financing and breaching the "Good Faith Negotiations" clause in the Blue Heron Loan) and related fraudulent and negligent misrepresentation. Hancock Bank now moves to dismiss the

---

[3] As a procedural matter, it is questionable whether Blue Heron is properly a party to this lawsuit. Counter Claimants filed an unopposed Motion for Joinder (Doc. 38) currently pending before the Court, the purported basis for which is Rule 20 and 23 of the Federal Rules of Civil Procedure. Neither Rule, however, permits Blue Heron to join as a counter claimant as it attempts to do here. Rather, the proper basis for its motion appears to be Rule 24.

Counterclaim and strike various affirmative defenses based on the *D'Oench*[4] doctrine and 12 U.S.C. § 1823(e).

## II. Standard

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the Plaintiff, *see, e.g.*, *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994), and must limit its consideration to the pleadings and any exhibits attached thereto. FED. R. CIV. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing FED. R. CIV. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-555 (2007). The complaint's factual allegations "must

---

[4] *D'Oench, Duhma & Co. v. FDIC*, 315 U.S. 447, 62 S. Ct. 676, 86 L. Ed. 956 (1942).

be enough to raise a right to relief above the speculative level," *Id*. at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950-1951 (2009).

**III. Discussion**

    **A. Motion to Dismiss**

All six Counts in the Counterclaim arise out of Colonial's failure to provide end-user financing and to comply with the "Good Faith Negotiations" clause in the Blue Heron Loan. Both of these agreements, however, were between Colonial and Blue Heron and made *after* Colonial assigned the ORL Loan to Peoples First. It is undisputed that neither Hancock Bank, nor Peoples First, were parties to the Blue Heron Loan (and thus, the Good Faith clause), and neither were parties to the alleged end-user finance agreement. If Counter Claimants have a cause of action for breach or misrepresentation of these agreements, it would appear to be against BB&T as the successor in interest to Colonial, not against Hancock Bank.

Counter Claimants attempt to avoid dismissal by alleging, (1) that Colonial knew ORL and Blue Heron were joint venturers and (2) that Colonial "treated" the ORL and Blue Heron Loans as a single loan. As such, they argue that Hancock Bank was on notice that the two Loans were connected, and that a breach of one constitutes a breach of the other. To this end, the Counterclaim references several meetings and three emails between Colonial representatives and Schinz.[5] These emails, which are attached to the Counterclaim, discuss the details of both loans, and suggest that they be modified similarly or sold together. (Doc. 31-20). Combined with Colonial's knowledge that ORL and Blue

---

[5] Schinz, or "Freddy" as he is referred to in the attached emails, appears to be an officer in either ORL and Blue Heron. It is unclear exactly what his position is because neither party directly addresses it.

Heron were joint venturers, Counter Claimants argue that this is sufficient to put the FDIC, and thus, Hancock Bank, on notice that the ORL and Blue Heron Loans are the same.

This argument however, is unpersuasive. The *D'Oench* doctrine provides that between a bank customer and the FDIC, as successor to a bank, "the customer may not rely on agreements outside the documents contained in the bank's records to defeat a claim of the FDIC." *Baumann v. Savers Fed. Sav. & Loan Ass'n*, 934 F.2d 1506, 1514-15 (11th Cir. 1991) (citing *D'Oench*, 315 U.S. 447, 62 S. Ct. 676 ). This rule was later codified in 12 U.S.C. § 1823(e).

> This statute precludes enforcement against the FDIC any 'agreement' that is adverse to the interests of the FDIC unless the agreement is in writing, was executed by the relevant parties at the same time as the loan, is approved in the minutes of the lender's board of directors or appropriate loan committee, and has continuously appeared in the lender's official records of the loan.

*Savers Fed. Sav. & Loan Ass'n v. Amberley Huntsville, Ltd.,* 934 F.2d 1201, 1206 (11th Cir.1991); *see also Federal Deposit Ins. Corp. v. McCullough*, 911 F.2d 593, 598 (11th Cir.1990), *cert. denied,* 500 U.S. 941, 111 S.Ct. 2235, 114 L.Ed.2d 477 (1991)). This protection is extended to "entities to whom the FDIC, acting in its capacity as receiver of failed banks, has transferred assets formerly belonging to a failed bank." *First Union Nat. Bank of Florida v. Hall*, 123 F.3d 1374, 1379 n. 8 (11th Cir. 1997) (citing *Victor Hotel Corp. v. FCA Mortgage Corp.*, 928 F.2d 1077, 1083 (11th Cir. 1991)). Hancock Bank is a transferee, from the FDIC, of assets formerly belonging to a failed bank (Peoples First). Accordingly, it argues that the Counterclaim is based solely on agreements not "specifically memorialized in writing" and thus, not enforceable.

Counter Claimants argue that the emails are such writings, and that they are sufficient to overcome *D'Oench*. However, simply that a document is "written and in the bank's records is not enough to bring the case outside *D'Oench* and section 1823(e)." *Twin Const., Inc. v. Boca Raton, Inc.*,

925 F.2d 378, 383 (11th Cir. 1991). This is because, "[a] banking agency would not normally be aware of any obligation contained in any written document that purports to be an agreement between the failed bank and the borrower unless that document is executed-that is, signed-by the failed bank." *Hall*, 123 F.3d at 1380. Courts have applied the *D'Oench* doctrine to exclude fully prepared, but otherwise unexecuted loan documents. *See Twin Const.*, 925 F.2d at 383-4. As another court noted, "[i]f unsigned loan documents prepared by the bank cannot be included in the bank's official records, then email communications certainly cannot either." *Centennial Bank v. Piney Point Preserve, LLC*, No. 5:11-cv-49-RS-EMT, 2011 WL 6119150 at *3 (N.D. Fla. Dec. 8, 2011). Other than three emails, Counter Claimants have not alleged that there was any document in Colonial's records to establish that the ORL and Blue Heron Loan were effectively merged.[6] Accordingly, Counter Claimants have not presented any basis upon which to hold Hancock Bank liable for any of the alleged misconduct in the Counterclaim.[7]

---

[6] Even if such a document existed and Colonial actually promised to treat the two Loans as one, it eventually assigned the ORL Loan to Peoples First, but retained the Blue Heron Loan. Since the "Good Faith Negotiations" clause was added to the Blue Heron Loan after this assignment, it is impossible to see how Hancock Bank could be liable for a breach of this clause. As for the end-user financing, that purported agreement was made independent from either Loan. Even if it was directed to both ORL and Blue Heron (as joint venturers), Hancock Bank cannot be charged with Colonial's failure to abide by that agreement because Hancock Bank is *not* Colonial's successor in interest–except with respect to the ORL Loan which was assigned to Peoples First *before* the end-user agreement was made.

[7] It is important to note that the Counterclaim asserts no cause of action based on Colonial's alleged promise to treat the two Loans as one. That was breached, if at all, when Colonial stated that it would not extend the Loans as promised, and assigned the ORL Loan to Peoples First, but retained the Blue Heron Loan. To the extent that Counter Claimants do assert a cause of action based on this agreement, it is barred by *D'Oench* as there are no allegations that it is recorded in the bank's official records.

**B. Motion to Strike**

Federal Rule of Civil Procedure 12(f) allows a court to strike from a pleading an insufficient defense, or any redundant, immaterial, impertinent, or scandalous matter. A court may strike an affirmative defense as "insufficient as a matter of law" if, on the face of the pleadings, the defense is patently frivolous or clearly invalid. *HW Aviation LLC v. Royal Sons, LLC*, No. 8:01-cv-2325-T-23MAP, 2008 WL 4327296 at *6 (M.D. Fla. Sept. 17, 2008) (citing *Microsoft Corp. v. Jesse's Computers & Repair, Inc.,* 211 F.R.D. 681, 683 (M.D. Fla.2002). An affirmative defense may also be stricken if it fails to meet the general pleading requirements of Fed. R. Civ. P. 8. *Id.*

Hancock Bank moves to strike affirmative defenses one through seven (*See* Doc. 31 at 23-27), on the basis that each is barred by the *D'Oench* doctrine. Upon review, affirmative defenses one through seven are insufficient as a matter of law. Each is based on the alleged misdeeds of Colonial that cannot be attributed to Hancock bank. For the reasons disussed in section III. A. *supra*, the Motion to strike will be granted as to affirmative defenses one through seven.

Defendants withdraw their eighth and ninth affirmative defenses and their jury trial demand. (Doc. 44 at 15). To the extent Hancock Bank seeks to strike the same, that motion will be denied as moot.

In light of the foregoing, it is **ORDERED** that Hancock Bank's Motion to Dismiss the Counterclaim (Doc. 40) is **GRANTED**; Hancock Bank's Motion to Strike (Doc. 39) is **GRANTED in part and DENIED in part**, it is denied as moot to the extent it seeks to strike the jury demand and affirmative defenses eight and nine, but granted in all other respects.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on March 14, 2012.

Copies furnished to:

Counsel of Record
Unrepresented Party

_____
**GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE**